Grafton
No. 2006-113

FREDERICK J. MURRAY

v.

NEW HAMPSHIRE DIVISION OF STATE POLICE, SPECIAL INVESTIGATION
UNIT & a.

Argued: November 14, 2006
Opinion Issued: December 20, 2006

*Gallant & Ervin, LLC,* of Chelmsford, Massachusetts (*Timothy J. Ervin* on the brief and orally), for the petitioner.

*Kelly A. Ayotte,* attorney general (*Daniel J. Mullen,* associate attorney general, on the brief, and *Nancy J. Smith,* senior assistant attorney general, orally), for the respondents.

GALWAY, J. The petitioner, Frederick J. Murray, appeals an order of the Superior Court (*Vaughan,* J.) denying his request for injunctive and other relief relative to the decisions of the respondents, the New Hampshire Division of State Police, Special Investigation Unit and several other law enforcement agencies and officials, not to disclose records relating to the disappearance of his daughter, Maura Murray. We vacate and remand.

The following facts were either found by the trial court or appear in the record and are not disputed by the parties on appeal. On February 9, 2004, Maura Murray's vehicle was reported to have been involved in a single-car accident along Route 112 in Haverhill, New Hampshire. When the North Haverhill police arrived at the scene, they found no trace of Maura. In the nearly three years since her disappearance, numerous agencies and individuals have attempted to locate her without success.

After the accident, and through approximately October 2005, the petitioner sent requests to numerous agencies, pursuant to New Hampshire's Right-to-Know Law, RSA ch. 91-A (2001 & Supp. 2006), and the federal Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 (2002) *et seq.,* requesting records and information pertaining to those agencies' investigations into Maura's disappearance. All of the investigatory material is now under the control of the attorney general's office. With a single, minor exception, the attorney general's office has denied all of the petitioner's requests on the grounds that the records are exempt from disclosure because they are investigatory and because disclosure would constitute an unwarranted invasion of privacy.

In December 2005, the petitioner filed a petition in superior court requesting, among other things, a declaration that the respondents' denials violated the Right-to-Know Law and FOIA, and an injunction requiring the respondents to release the requested documents. In January 2006, the trial court ruled that the requested records were investigatory in

nature and that disclosure could interfere with law enforcement proceedings. It therefore denied the petitioner's requests. Additionally, the trial court did not find either an *in camera* review or the compilation of a *Vaughn* index necessary. *See Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 548-551 (1997) (explaining the attributes of a *Vaughn* index). The trial court did not address the petitioner's contention that disclosing the documents would not constitute an invasion of privacy.

On appeal, the petitioner contends that the trial court erred in finding that the requested records were investigatory in nature and that disclosure could interfere with law enforcement proceedings. The petitioner also contends that disclosing the records would not constitute an invasion of privacy. Finally, the petitioner argues that the trial court erred in denying his request for *in camera* review or the compilation of a *Vaughn* index.

"The interpretation of a statute, including the Right-to-Know Law, is to be decided ultimately by this court." *N.H. Challenge v. Commissioner, N.H. Dep't of Educ.*, 142 N.H. 246, 249 (1997) (quotation omitted). "The superior court's legal conclusions and its application of law to fact are ultimately questions for this court." *Id.* Thus, in the absence of disputed facts, we review the trial court's ruling *de novo. Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 476 (1996).

██ "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." *N.H. Civil Liberties Union v. City of Manchester*, 149 N.H. 437, 438 (2003) (quotation omitted). Thus, the Right-to-Know Law helps further our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted. *Id.; see also* N.H. CONST. pt. I, art. 8. While the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents. *Id.* Therefore, we construe provisions favoring disclosure broadly, while construing exemptions narrowly. *Id.* "We also look to the decisions of other jurisdictions, since other similar acts, because they are *in pari materia*, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved." *N.H. Housing Fin. Auth.*, 142 N.H. at 546 (quotation omitted). Finally, when a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure. *City of Nashua*, 141 N.H. at 476.

Because the respondents make no argument to the contrary, we presume for purposes of this appeal that all respondents are subject to the disclosure requirements of the Right-to-Know Law. Our Right-to-Know Law does not explicitly address requests for police investigative files, such as those at issue here. *Id.* at 475. In *Lodge v. Knowlton*, 118 N.H. 574 (1978), therefore, we adopted the six-prong test under FOIA for evaluating requests for access to police investigative files. Under FOIA, an agency may exempt from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual
>  . . . .

5 U.S.C. § 552 (b)(7). Because the trial court based its decision upon exemption (A) above, regarding interference with enforcement proceedings, we first consider the application of that exemption.

The entity resisting disclosure under exemption (A) must initially show that the requested documents are: (1) investigatory; and (2) compiled for law enforcement purposes. *Lodge*, 118 N.H. at 576-77. The petitioner does not challenge the trial court's findings that the requested documents are investigatory in nature and that they were complied for law enforcement purposes. Accordingly, we conclude that the respondents have met their initial burden.

We next consider whether exemption (A) in fact applies. As noted, we construe provisions favoring disclosure broadly, while construing exemptions narrowly. *N.H. Civil Liberties Union,* 149 N.H. at 438. The key question in the analysis is whether revelation of the documents could reasonably be expected to interfere with enforcement proceedings. *Curran v. Dept. of Justice,* 813 F.2d 473, 474 (1st. Cir. 1987). While an agency must show that enforcement proceedings are pending or reasonably anticipated, *see Mapother v. Dept. of Justice,* 3 F.3d 1533, 1540 (D.C. Cir. 1993); *see also NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 232 (1978), we need not determine whether the respondents have made such a showing here. Assuming, without deciding, that enforcement proceedings are reasonably anticipated, we hold that the respondents have not met their burden to demonstrate that disclosure of the requested documents could reasonably be expected to interfere with those proceedings.

■ Exemption (A) was designed to eliminate "blanket exemptions" for government records simply because they were found in investigatory files compiled for law enforcement purposes. *Curran,* 813 F.2d at 475. "Put another way, merely because a piece of paper has wended its way into an investigative dossier created in anticipation of enforcement action, an agency . . . cannot automatically disdain to disclose it." *Id.* Since an agency may not rely on a blanket exemption, it must meet a minimum threshold of disclosure in order to justify its refusal to disclose. *Id.* The agency is not required, however, to justify its refusal on a document-by-document basis. *Id.* While an *in camera* review or the preparation of a *Vaughn* index may be sufficient to justify an agency's refusal to disclose, such measures are also not necessarily required. *See id.* (noting that use of a *Vaughn* index is not practicable in cases involving exemption (A)).

■ In cases such as this one, generic determinations of likely interference often will suffice. *Id.*; *see also Robbins Tire,* 437 U.S. at 236. When generic determinations are used, the withholding "should be justified category-of-document by category-of-document not file-by-file." *Curran,* 813 F.2d at 475 (quotation and ellipses omitted); *see also Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 789 F.2d 64, 66-67 (D.C. Cir. 1986). The categorization should be clear enough to permit a court to ascertain how each category of documents, if disclosed, could interfere with the investigation. *Curran,* 813 F.2d at 475. The categories must be distinct enough to allow meaningful judicial review, yet not so distinct as to reveal the nature and scope of the investigation. *Id.*

In order to provide some guidance to trial courts attempting to apply this standard, we emphasize two points made in the *Curran* decision. First, the *Curran* Court provided some examples of types of categories

which, because coupled with careful explanation to the trial court as to how interference with enforcement proceedings could occur, satisfied the aforementioned principles. These categories included: "details regarding initial allegations giving rise to th[e] investigation; interviews with witnesses and subjects; investigative reports furnished to the prosecuting attorneys; contacts with prosecutive attorneys regarding allegations, subsequent progress of investigations, and prosecutive opinions ...." *Curran*, 813 F.2d at 476. Second, in the case of one-of-a-kind records, *Curran* would not preclude application of the exemption if an enforcement agency made limited use of a "miscellaneous" category to avoid having to set forth a precise—and potentially compromising—description of the record(s). *See id.*

■ Prior to the hearing on this matter, the respondents disclosed a one-page document delineating twenty categories of information contained within their investigative files. The record reveals that the trial court made no findings or rulings regarding the sufficiency of these categories. Based upon our review, we hold that the respondents' categories do not meet the requirements of the Right-to-Know Law. The respondents' categories include, for example, the broad terms "photographs," "correspondence (letters and e-mails)," "maps and diagrams" and "tax records," without any annotations or explanations. While additional explanation might have allowed the respondents to meet their burden, *see, e.g., Curran*, 813 F.2d at 476 (government's categorization was sufficient because it was accompanied by a declaration carefully explaining how the release of documents in the various categories would interfere with enforcement proceedings), the respondents offered no affidavits, testimony, or other evidence which, for example: (1) defined these categories more precisely; (2) explained how disclosure of the information within these categories could interfere with any investigation or enforcement; or (3) explained why "there was no reasonably segregable portion of any of the withheld material suitable for release ...." *Curran*, 813 F.2d at 476 (quotation omitted). Accordingly, we conclude that the respondents have not met their burden to demonstrate how disclosure of the requested documents could reasonably be expected to interfere with any investigation or enforcement proceedings.

■ The respondents point out that during the hearing in the superior court, it supplied witnesses who could have been, but were not, cross-examined by the petitioner. The fact that witnesses could have testified to certain things on cross-examination would not, however, have fulfilled the respondents' obligation. Under the Right-to-Know Law, the respondents bear the burden of demonstrating why the requested information should

not be disclosed. *See City of Nashua*, 141 N.H. at 476; *cf. Curran*, 813 F.2d at 473-74. It is not the petitioner's responsibility to clarify the respondents' vague categorizations, nor should the petitioner be penalized for failing to do so.

Accordingly, because the respondents have not met their burden to justify withholding the requested documents, we remand the matter for a new hearing. On remand, if the respondents continue to resist disclosure, they must make a presentation that will allow the superior court to determine how disclosure of the requested information could interfere with an ongoing investigation or enforcement proceedings. *Crooker*, 789 F.2d at 67. Given the disposition of this appeal, we need not consider the petitioner's privacy argument.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.