Belknap
Nos. 2007-566, 2007-685

DOUGLAS LAMBERT & a.

v.

BELKNAP COUNTY CONVENTION

THOMAS A. TARDIF & a.

v.

STEPHEN H. NEDEAU, CHAIRPERSON & a.

Argued: March 20, 2008
Opinion Issued: June 13, 2008

Douglas Lambert, *pro se*; and Thomas A. Tardif, *pro se* (Mr. Lambert and Mr. Tardif on the brief, and Mr. Tardif orally).

*Ransmeier & Spellman, Professional Corporation*, of Concord (*Daniel J. Mullen* on the brief and orally), for the defendants.

DUGGAN, J. In these consolidated appeals, the petitioners, Douglas Lambert and Thomas A. Tardif, challenge: (1) the failure of the Trial Court (*Mohl*, J.) to invalidate the appointment of Craig Wiggin to the office of Belknap County sheriff by respondent Belknap County Convention (Convention); and (2) the trial court's denial of their request for documents from respondents Stephen H. Nedeau, the Convention's chairperson, and Angela A. Bell, the Convention's record keeper. *See* RSA ch. 91-A (2001 & Supp. 2007). We hold that the appointment of Wiggin must be invalidated because

the Convention was required to fill the vacancy in public session rather than by secret ballot. *See* RSA 91-A:2, II, :8, II (Supp. 2007). We further hold that the petitioners must be afforded access to the documents relating to the candidates' applications for the vacancy, *see* RSA 91-A:4, I (Supp. 2007), but remand for consideration of whether certain personal information that may be in those documents requires redaction. Accordingly, we reverse and remand.

I

The following facts are undisputed. The Convention consists of the state representatives of Belknap County's representative districts, RSA 24:1 (2000), and has the power, among other things, to fill a vacancy for the unexpired term of an elected county office, including that of the Belknap County sheriff, RSA 661:9, I (Supp. 2007). *See also* N.H. CONST. pt. II, art. 71 ("The county . . . sheriffs . . . shall be elected . . . ."); RSA 653:1, V (Supp. 2007) (mandating that one sheriff be elected for a two-year term at every state general election).

On May 29, 2007, the Convention convened to discuss the mid-term vacancy created by the resignation of Sheriff Dan Collis. To discuss the process for filling the vacancy, the Convention voted to enter nonpublic session. *See generally* RSA 91-A:3 (Supp. 2007). The minutes of that session note, in pertinent part:

> Chair[person] Nedeau announced that the applications for seven candidates have been sent to each . . . member, and that letters of recommendation are on file in Angela Bell's office, and will also be sent out. The [Convention] agreed that all seven should be interviewed, and asked specific questions. Each [member] will have a score sheet for each candidate.

On June 11, 2007, the Convention again voted to enter nonpublic session. During the nonpublic session, the Convention interviewed the seven candidates and ultimately selected two finalists for the vacancy. The Convention publicly announced the names of the two finalists, but did not disclose the full list of applicants.

On June 23, 2007, the petitioners submitted a written request to Bell to review the seven applications, all letters of recommendation, and all score sheets (documents). After speaking with Nedeau, Bell refused to disclose the documents. Alleging a violation of RSA chapter 91-A, the Right-to-Know Law, the petitioners filed a petition for declaratory judgment against Nedeau and Bell, seeking disclosure of the documents. *See* RSA 91-A:4. The trial court denied the petitioners' request because it found that the privacy interests of the seven applicants outweighed the public's interest in disclosure of "otherwise personal information."

On June 25, 2007, the Convention interviewed the two finalists in public session. After deciding to use a secret paper ballot to vote, the Convention, by a vote of ten-to-four with one abstention, selected Wiggin as sheriff. Before Wiggin commenced his official duties as sheriff, the petitioners filed a declaratory judgment action against the Convention. They alleged that the Convention violated the Right-to-Know Law by using a secret ballot to fill the vacancy, *see* RSA 91-A:2, II, and requested that the trial court invalidate the selection of Wiggin as sheriff, *see* RSA 91-A:8, II.

The trial court agreed that the Convention violated the Right-to-Know Law by using a secret ballot. However, the court found that, pursuant to RSA 91-A:3, II(b), the Convention could have "conduct[ed] the entire process of selecting the Sheriff in nonpublic sessions," and, because "the Convention went further than the Right-to-Know law required [by] conducting interviews with the two final candidates in public and voting at the public session, albeit by secret ballot," there was "no reason to believe that the Convention would reach a different result if the matter were to be revisited by the Convention." Thus, the court declined to invalidate the selection of Wiggin as sheriff.

On appeal, the petitioners contend that the trial court erred in: (1) finding that the Convention could have conducted the entire appointment process in nonpublic sessions; (2) failing to invalidate the selection of Wiggin as sheriff; and (3) failing to provide them access to the documents.

II

Resolution of this case requires us to interpret several statutory provisions, including certain provisions of the Right-to-Know Law. The ordinary rules of statutory construction apply to our review of the Right-to-Know Law. *Lamy v. N.H. Pub. Utils. Comm'n*, 152 N.H. 106, 108 (2005). Thus, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 503-04 (2007). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* at 504. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* Where, as here, the facts are undisputed, we review the trial court's rulings *de novo*. *Murray v. N.H. Div. of State Police*, 154 N.H. 579, 581 (2006).

"The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." *Id.* (quotation omitted). The law "helps further our state constitutional requirement that the public's

right of access to governmental proceedings and records shall not be unreasonably restricted." *Id.* (quotation omitted); *see also* N.H. CONST. pt. I, art. 8. Although the statute does not provide for unrestricted access to public records and proceedings, to best effectuate the statutory and constitutional objective of facilitating access to all public documents and proceedings, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information. *Id.*; *Herron v. Northwood*, 111 N.H. 324, 326 (1971).

■ Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly. *Murray*, 154 N.H. at 581 (citation omitted). "We also look to the decisions of other jurisdictions, since other similar acts, because they are *in pari materia*, are interpretively helpful, especially in understanding the necessary accommodation of the competing interests involved." *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 546 (1997) (quotation omitted); *see also Lamy*, 152 N.H. at 108. "[W]hen a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure." *Murray*, 154 N.H. at 581 (citation omitted).

### III

RSA 661:9 provides, in relevant part: "If a vacancy occurs in the office of county sheriff . . . , the members of the county convention shall fill the vacancy for the unexpired term by majority vote." RSA 91-A:2, II states, in pertinent part: "All public proceedings shall be open to the public, and all persons shall be permitted to attend any meetings of those bodies or agencies. Except for town meetings, school district meetings and elections, *no vote while in open session may be taken by secret ballot.*" (Emphasis added.) Pursuant to RSA 91-A:3, I, "[b]odies or agencies shall not meet in nonpublic session, except for one of the purposes set out in paragraph II," and "[n]o body or agency may enter nonpublic session, except pursuant to motion properly made and seconded" that "state[s] on its face the specific exemption under paragraph II . . . relied upon as foundation for the nonpublic session."

The respondents assert, and the trial court found, that the Convention could have filled the vacancy in the office of the sheriff in nonpublic session pursuant to the exemption in paragraph II(b). We disagree.

Paragraph II(b) permits a body or agency to "consider[ ] or act[ ] upon . . . [t]he hiring of any person as a public employee" in nonpublic session. RSA 91-A:3, II(b). "Filling" a "vacancy . . . in the office of the county sheriff," RSA 661:9, I, is not equivalent to "hiring" a "person as a public employee," RSA 91-A:3, II(b). In common understanding, public

officers are elected or appointed, not hired. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (unabridged ed. 2002) (defining "public officer" as "a person holding a post to which he has been legally *elected* or *appointed* and exercising governmental functions" (emphases added)). Consistent with that understanding, a person is normally "elected" to the office of the county sheriff for a specified term. *See* N.H. CONST. pt. II, art. 71; RSA 653:1, V.

However, when the office becomes vacant during that term, the Convention may "fill the vacancy"; that is, "furnish ([the] vacancy or office) with an occupant or incumbent." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 531 (1966) (defining "fill"); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 849 (unabridged ed. 2002) (defining "fill" as, *inter alia*, "to provide with incumbents[, *e.g.*, fill] vacancies left by retirements"). In so doing, the Convention is not "hiring" or "engag[ing] the personal services of" that occupant or incumbent "for a fixed sum." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1072 (unabridged ed. 2002) (defining "hire"). Notably, the superior court, not the Convention, has the authority to remove a sheriff for official misconduct, *see* RSA 661:9, IV, and, otherwise, the interim sheriff is accountable only to the people. Thus, the Convention is not "hiring" the occupant for the office of the sheriff, but is instead designating an occupant for, or placing an occupant in, the vacant office in lieu of an election, and as such is essentially "appointing" a person to the office. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (unabridged ed. 2002) (defining "appoint" as "to assign, designate, or set apart by authority . . . [or] to place in an office or post"); *cf. Board of Educ. v. Freedom of Inf. Comm'n*, 566 A.2d 1380, 1381 (Conn. Super. Ct. 1988) (interpreting the term "filling a vacancy" as constituting an "appointment").

■ The respondents agree that the Convention's selection of Wiggin as sheriff constituted an appointment, but contend that we should construe the term "hiring" broadly to include "appointments." To do so would be contrary to our well-established practice of construing exemptions under the Right-to-Know Law narrowly, in order to further the primary purpose of the statute to permit freedom of access to public records and proceedings. *Lamy*, 152 N.H. at 108; *Herron*, 111 N.H. at 326. Thus, we decline to hold that "[t]he hiring of . . . a public employee" includes the appointment of an interim sheriff.

While it could have used language specifically exempting appointments from the open meeting requirement, as other states have done, *see, e.g.*, Ariz. Rev. Stat. Ann. § 38.431.03(A)(1) (LexisNexis 2007); Ohio Rev. Code Ann. § 121.22(G)(1) (LexisNexis 2007); W. Va. Code Ann. § 6-9A-4(b)(2)(A)

(LexisNexis 2006), our legislature chose to limit instances in which a body or agency may meet in nonpublic session to those where the body or agency is considering or acting upon the hiring of a person as a public employee. We will not insert words that the legislature did not see fit to include. *Carr & Edmunds,* 156 N.H. at 503-04. Accordingly, because the trial court did not cite, and the respondents do not offer, any other exemption supporting the notion that the Convention could have filled the vacancy in the office of the sheriff in nonpublic session, we conclude that the Convention was required to fill the vacancy in the office of the sheriff in public session.

At the May 29 and June 11, 2007 meetings prior to the secret ballot vote, after motion, the Convention entered nonpublic sessions to, respectively, discuss the process for filling the vacancy and interview the seven candidates for the office. The trial court ruled, and the Convention does not contest, that, in violation of RSA 91-A:3, I, neither motion to enter nonpublic session stated on its face a specific exemption under RSA 91-A:3, II that provided foundation for the nonpublic sessions. Given that the Convention has not challenged the trial court's ruling, we need not address the consequences of the Convention's failure to cite a specific exemption prior to entering nonpublic session on May 29 and June 11, or whether any of the exemptions in RSA 91-A:3 apply to those sessions.

Keeping in mind the legislature's intent to allow public access to such meetings, we must now consider whether the trial court properly declined to invalidate Wiggin's selection as sheriff despite the Convention's use of a secret ballot. Under RSA 91-A:8, II, "[t]he court *may* invalidate an action of a public body or agency taken at a meeting held in violation of the provisions of this chapter, if the circumstances justify such invalidation." (Emphasis added.) "It is a general rule of statutory construction that the word 'may' is permissive in nature . . . ." *In the Matter of Bazemore & Jack,* 153 N.H. 351, 354 (2006). Thus, we review the trial court's decision under our unsustainable exercise of discretion standard. *See id.* at 355-56; *State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

█ In generally forbidding secret ballot votes during open session, *see* RSA 91-A:2, II, the legislature clearly evinced its intent to allow the public an opportunity to know and scrutinize the actions of its governmental officials. "[P]ublic knowledge of the considerations upon which governmental action is based and of the decisions taken is essential to the democratic process." *Carter v. Nashua,* 113 N.H. 407, 416 (1973) (citation omitted). Where, as here, "a public body is appointing an individual to fill a position normally filled by an elected official, the reasons for allowing public

scrutiny of the actions taken are even more compelling." *Gannett Satellite Info. Net. v. Bd. of Educ.*, 492 A.2d 703, 706 (N.J. Super. Ct. Law Div. 1984). Such public scrutiny is of even greater import when the public body at issue consists of persons who by their very nature represent the will of the people, and, in their actions, are substituting their judgment for that of the people. Thus, the Convention's decision to fill the vacancy by secret ballot contravenes not only the explicit legislative mandate against such votes, but also the fundamental purpose of the Right-to-Know Law "to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2001).

Moreover, in this case, the vote revealed that four representatives opposed the selection of Wiggin as sheriff and one representative abstained from the vote altogether. In these circumstances, the public's need for scrutiny was critical since there was no other manner in which members of the public could determine how their representatives voted such that they could then hold the representatives accountable. *Id.* Accordingly, we conclude that the trial court unsustainably exercised its discretion in failing to invalidate the Convention's selection.

## IV

We now examine whether the respondents must disclose the requested documents. RSA 91-A:4, I, provides, in pertinent part, that "[e]very citizen . . . has the right to inspect all public records, including minutes of meetings of the bodies or agencies, and to make memoranda, abstracts, and photographic or photostatic copies of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5."

The trial court relied upon the exemption in RSA 91-A:5, IV for "other files whose disclosure would constitute invasion of privacy" in denying the petitioners access to the documents. Specifically, the trial court found: "Disclosure of the documents will not inform the public about the conduct and activities of their government but will instead inform the public of the seven candidates' personal information. Moreover, disclosure of such personal information may discourage candidates from applying for similar positions in the future." Thus, the court found that the privacy interests of the candidates "outweigh the public's unarticulated interest in disclosure of otherwise personal information." We disagree.

■ We engage in a three-step analysis when considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV. *Lamy*, 152 N.H. at 109. First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. *Id.* Whether information is exempt from disclosure because it is private is

judged by an objective standard and not a party's subjective expectations. *Id.* If no privacy interest is at stake, the Right-to-Know Law mandates disclosure. *Id.*

■ Second, we assess the public's interest in disclosure. *Id.* Disclosure of the requested information should inform the public about the conduct and activities of their government. *Id.* "If disclosing the information does not serve this purpose, disclosure will not be warranted even though the public may nonetheless prefer, albeit for other reasons, that the information be released." *Id.* at 111 (quotation omitted).

■ Finally, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. *Id.* at 109. However, an individual's motives in seeking disclosure are irrelevant to the question of access. *Id.* at 111. "Information that is subject to disclosure under the Right-to-Know Law belongs to citizens to do with as they choose. As a general rule, if the information is subject to disclosure, it belongs to all." *Id.* (quotation and ellipses omitted).

The trial court found that the candidates have a general privacy interest in their personal information. *Id.* at 110 (explaining that "disclosing a person's name and address implicates that person's privacy rights because the disclosure serves as a conduit into the sanctuary of the home" (quotation omitted)). The respondents add that the candidates have a privacy interest in the documents because: (1) their disclosure "may embarrass or harm applicants who failed to get a job"; and (2) "[t]heir present employers, co-workers, and prospective employers, should they seek new work, may learn that other people were deemed better qualified for a competitive appointment."

First, in deciding whether the candidates have a general privacy interest in the requested documents, we emphasize that the candidates applied for a vacancy in an *elected* office. Under normal circumstances, they would have run for election and much of their personal information would have been subject to public scrutiny. *See, e.g.*, RSA 653:1 (county sheriff elected at state general election); RSA 655:14-a, :17-a (1996) (requiring every candidate for state office who intends to have his or her name placed on the ballot for state general election by means other than nomination by party primary to file a declaration of intent with the secretary of state, which, among other things, states the candidate's name, and ward, city, and county in which he or she is domiciled). Each candidate's employer as well as the general public would have had full knowledge that the candidate sought to become county sheriff, and, thus, the candidate could not have reasonably expected to keep his or her "application" private. *See City of Kenai v. Kenai Peninsula Newspapers*, 642 P.2d 1316, 1324 (Alaska 1982) ("Public officials

must recognize their official capacities often expose their private lives to public scrutiny . . . . It may be that in some cases an individual will not wish his current employer to know that he has applied for another job. That desire is one which cannot be accommodated where the job sought is a high public office." (quotation omitted)).

We see no reason why candidates who apply for a vacancy in an elected office should have a greater privacy interest than candidates who run for that same office during an election year. In both situations, a candidate's decision to apply for an elected public office places his or her qualifications for that office at issue, and, consequently, requires members of the public, either individually or through their representatives, to evaluate the particular candidate. Thus, a candidate voluntarily seeking to fill an elected public office has a diminished privacy expectation in personal information relevant to that office. *Cf. Physicians Committee for Resp. Medicine v. Glickman*, 117 F. Supp. 2d 1, 3, 6 (D.D.C. 2000) (finding that nonappointed applicants for membership on advisory committee for United States Department of Agriculture had minimal privacy interests in their *curricula vitae*); *City of Kenai*, 642 P.2d at 1324; *Capital City Press v. Metro. Council*, 696 So. 2d 562, 567-69 (La. 1997) (finding that applicants for public employment have no privacy interest in their resumes); *Gannett River States Publ. v. Hussey*, 557 So. 2d 1154, 1159 (La. Ct. App. 1990) (finding that expectations of privacy of applicants for position as chief of fire department in a substantial municipality "was not *objectively* reasonable under the circumstances"), *writ denied*, 561 So. 2d 103 (La. 1990).

Second, we consider the public's interest in disclosure. Contrary to the respondents' assertion, disclosure of these documents would undoubtedly inform the public about its government's activities. *Lamy*, 152 N.H. at 109. Again, the candidates applied for a vacancy in an *elected* office. The public has a significant interest in knowing the candidates under consideration for that office. A successful candidate's continued retention in the office of sheriff, absent official misconduct, *see* RSA 661:9, IV, is dependent wholly upon the approval of the public, not upon the approval of the Convention or any other agency or department, *Gannett Satellite Info. Net.*, 492 A.2d at 705-06. Therefore, the members of the public should have the opportunity to evaluate the candidates and determine which candidate they believe is best qualified to perform the duties of the office. *See City of Kenai*, 642 P.2d at 1324 ("Disclosing the names and applications of applicants allows interested members of the public . . . to verify the accuracy of the representations made by the applicants, and to seek additional information which may be relevant to the selection process."). Moreover, absent disclosure, members of the public would be left in the dark and would have no means of assessing the votes of their representatives. In these circum-

stances, where the Convention, based upon the information contained in the documents, is substituting its judgment for that of the people in selecting an interim sheriff, the public's interest in disclosure is paramount. *Cf. id.* at 1323.

Finally, in balancing the foregoing interests, we conclude that the public's interest in disclosure significantly outweighs the privacy interests of the candidates. The sole reason for the application process was the mid-term vacancy caused by the retirement of a sheriff who had been chosen by the people in a prior election. The public has a significant interest in information about the candidates who will fill the elected position. By applying to fill an elected public office, the candidates surrendered much of "the privacy secured by law for those who elect not to place themselves in the public spotlight." *Hatfield v. Bush*, 540 So. 2d 1178, 1182 (La. Ct. App. 1989) (citation omitted). Thus, the public's interest in disclosure outweighs the candidates' privacy interests in nondisclosure.

Citing *Hussey*, the respondents assert that the government has an interest in ensuring that the largest possible pool of qualified individuals apply for the vacancy, and that the pool of applicants may be significantly reduced if potential applicants are aware that their applications will be made public. We agree that the government has an interest in receiving the largest possible pool of qualified applicants for public employment. As in *Hussey*, however, we conclude that, in these circumstances, the public's interest in disclosure significantly outweighs the government's interest in nondisclosure. *Hussey*, 557 So. 2d at 1159; *see also City of Kenai*, 642 P.2d at 1324 (noting that "[i]t is not intuitively obvious that most well qualified potential applicants for positions of authority in . . . governments will be deterred from applying by a public selection process" and concluding that public interest in disclosure of applications for police chief and city manager outweighs the applicants' privacy interests in having their names and applications not revealed).

■ Because the office of the sheriff is an elected office "supported by public funds and upon which the lives and safety of the public depends, the public has a vital and obvious interest in the background of *all* applicants, not just the candidate finally selected by the" Convention. *Hussey*, 557 So. 2d at 1159. In this context, "[t]he public's scrutiny of the chosen candidate will lose all effect unless it has other candidates to which to compare the one chosen." *Id.* Thus, although the government and the candidates have an interest in nondisclosure, on balance, because of the important nature of the position sought, these interests must yield to the public's right to know. *See id.* Accordingly, the respondents have failed to meet their heavy burden of shifting the balance towards nondisclosure.

On appeal, the petitioners request access to all the information in the documents. In a similarly all-or-nothing fashion, the respondents counter that the petitioners are entitled to none of the information in the documents. The trial court does not appear to have conducted an *in camera* review of the documents, and the documents are not included in our record. As the United States Supreme Court has noted,

> ██ disclosure of a list of names and other identifying information is [not] inherently and always a significant threat to the privacy of the individuals on the list. Instead, . . . whether disclosure of a list of names is a significant or *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue.

*Department of State v. Ray*, 502 U.S. 164, 176 n.12 (1991) (quotation omitted).

Thus, while the candidates may have more than a minimal privacy interest in certain personal information contained in the documents by virtue of the nature of that information and the consequences that might ensue from its disclosure, we have no means of assessing whether redaction might be warranted for such information. We therefore remand for consideration of whether, in accordance with the principles outlined above, any personal information should be redacted before disclosure. On remand, the respondents bear the burden of identifying specific information, if any, that they believe requires redaction, and demonstrating that the interests of the candidates and government in nondisclosure of such information outweigh the public's interest in disclosure.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.