NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2020-0036

AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE & a.

v.

CITY OF CONCORD

Argued: February 11, 2021
Opinion Issued: December 7, 2021

American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Henry R. Klementowicz orally), for the plaintiffs.

City Solicitor's Office, of Concord (James W. Kennedy, city solicitor, on the brief and orally), for the defendant.

BASSETT, J. The plaintiffs, the American Civil Liberties Union of New Hampshire (ACLU) and the Concord Monitor, appeal an order of the Superior Court (Kissinger, J.) ruling that portions of a contract between an equipment vendor and the defendant, the City of Concord, for the purchase of "covert communications equipment" are exempt from disclosure under the Right-to-Know Law. See RSA ch. 91-A (2013 & Supp. 2020). The plaintiffs argue that the City failed to meet its burden of demonstrating that the redacted portions of the contract are exempt from disclosure, and that the trial court erred when

it held an ex parte in camera hearing, during which the City presented evidence supporting exemption.  We affirm in part, reverse in part, and remand.

The following facts are undisputed or are otherwise supported by the record.  On May 10, 2019, the Concord City Manager submitted a proposed 2019-2020 operating budget to the Mayor and the City Council.  Included under the proposed police budget was a $5,100 line item for "Covert Communications Equipment."  On May 24, the Monitor published a news article titled "Concord's $66.5M budget proposal has its secrets," which discussed the line item.  The Monitor reported that one of the City Councilors had asked the City Manager if he could provide a "hint" as to the nature of the equipment, but that the Manager had responded, "I don't know how to answer that question[] without 'answering it.'"  The City Manager did not publicly identify the equipment, saying only that it was not body cameras or a drone.  The Monitor reported that the Chief of Police had stated that the City has a non-disclosure agreement with the equipment's vendor that prevents the City from publicizing the nature of the equipment.

Shortly thereafter, the ACLU and the Monitor filed separate Right-to-Know requests with the City.  The ACLU requested "[d]ocuments sufficient to identify the specific nature of the 'covert communications equipment' sought by the Concord Police Department," and "[a]ny contracts or agreements between the Concord Police Department or the City of Concord and the vendor providing the 'covert communications equipment.'"  The Monitor similarly requested "documents related to the $5,100 'covert communications equipment' sought by the Concord Police Department," including "any contracts or agreements between the Concord Police Department or the City of Concord and the vendor providing the equipment, documents that detail the nature of the equipment, and the line items associated with the equipment in the department's budget."

The City responded to both requests by disclosing a partially-redacted 29-page, single-spaced "License & Services Agreement" between the City and the equipment vendor.  The redactions included the name of the vendor, the state law that governs the agreement, the nature of the equipment, the type of information gathered by the vendor, and how the vendor uses that information.  Most pages had fewer than 20 words redacted, and most of the redactions were either one or a few words.  Representative of the redactions is the following: "Law enforcement agencies may direct us to collect a wide variety of information from your [redacted] when you use the [redacted] services.  The information may include: [multiple clauses redacted]."  The disclosed portions of the agreement included the following: (1) the vendor would provide a "Website, Applications, [and] Services"; (2) the City would maintain ownership of "location information" and "other data" generated from its use of the Website, Applications, and Services; (3) the vendor would be indemnified for any losses

2

or damages incurred by the City due to a "suspension" of the Application; and (4) the City agreed to abide by the vendor's "Acceptable Use Policy and Privacy Policy."

In a letter accompanying the redacted agreement, the City explained that the redactions were necessary because the agreement "contains confidential information relative to surveillance technology that is exempt from disclosure under the law enforcement exemption" in Murray v. New Hampshire Division of State Police, 154 N.H. 579, 582 (2006). In Murray, we observed that the Right-to-Know Law does not explicitly address requests for law enforcement records or information, and we adopted the six-prong test under the federal Freedom of Information Act (FOIA) for evaluating requests for law enforcement records. Murray, 154 N.H. at 582. Under FOIA, the government may exempt from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual . . . .

5 U.S.C. § 552(b)(7) (2018). We have referred to the six prongs collectively as the Murray exemption. See 38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 661 (2012). In its letters to the plaintiffs, the City quoted Murray and invoked prong (E).

In response, the plaintiffs filed a petition in the superior court seeking disclosure of the redacted portions of the agreement. See RSA 91-A:7 (Supp. 2020). The City responded that the redacted information was exempt from disclosure under Murray, and that it would not disclose "the name of the vendor or any of the information redacted from the documents as such

3

disclosure could reasonably be expected to interfere with pending enforcement proceedings, disclose techniques and procedures for law enforcement investigations, risk circumvention of the law and endanger the life or physical safety of any individual." In effect, the City invoked prongs (A), (E), and (F) of the Murray exemption. See Murray, 154 N.H. at 582.

Shortly thereafter, the plaintiffs served a request for production of documents, see Super. Ct. R. 24, seeking an unredacted copy of the agreement, as well as other documents and contracts responsive to their Right-to-Know requests. The plaintiffs proposed that the documents be produced "subject to a mutually agreeable protective order." The City filed a motion to quash, arguing that a "petitioner cannot be allowed to circumvent the Right-to-Know Law exemptions simply by filing a Right-to-Know lawsuit and obtaining exempted materials through discovery." The City reiterated its position that the redacted information was "not subject to disclosure under [prongs] A, E and F," and submitted a two-page affidavit from the Chief of Police in which he stated that disclosure of the information could reasonably be expected to interfere with pending investigations, risk circumvention of the law, and endanger the life or physical safety of officers. See Murray, 154 N.H. at 582. With the plaintiffs' assent, the City also submitted an unredacted copy of the agreement to the trial court for in camera review. In addition, the City filed a motion for an ex parte in camera hearing, offering to make a police department representative available to answer the court's questions regarding the redactions. The plaintiffs objected.

In October 2019, the court held a 45-minute hearing on the pending motions. During the hearing, the court characterized the Chief's affidavit as "conclusory." In a subsequent written order, the court ruled that the City had failed to demonstrate that the redacted information was exempt from disclosure but that the court needed additional information before reaching a final decision. It therefore granted the City's motion for an ex parte in camera hearing. Neither the plaintiffs, nor their counsel, were permitted to attend.

At the ex parte in camera hearing, the Chief of Police testified as to the nature of the equipment and how it is used by the department. He explained how disclosing the name of the vendor and the nature of the equipment would undermine law enforcement investigations, risk circumvention of the law, and endanger lives. Although the transcript of the hearing is part of the record on appeal, the plaintiffs have never had access to the transcript. The trial court ruled that the redacted portions of the agreement are exempt from disclosure under prongs (A), (E), and (F) of the Murray exemption. This appeal followed.

On appeal, the plaintiffs argue that the trial court erred when it ruled that the redacted information is exempt from disclosure under prongs (A), (E), and (F), and also erred when it conducted the ex parte in camera hearing. The

4

City counters that it met its burden to demonstrate exemption under all three prongs, and that it was within the discretion of the trial court to hold the ex parte in camera hearing. We conclude that the court did not err when it conducted the hearing, and that it properly determined that most of the redacted information was exempt from disclosure. However, we also conclude that it erred by not disclosing one provision of the agreement.

"We review the trial court's interpretation of the Right-to-Know Law and its application of the law to undisputed facts de novo." 38 Endicott St. N., 163 N.H. at 660. "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." Montenegro v. City of Dover, 162 N.H. 641, 645 (2011) (quotation omitted). "Thus, the Right-to-Know Law helps further our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Id. We construe provisions favoring disclosure broadly, while construing exemptions narrowly. Murray, 154 N.H. at 581. Therefore, when a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure. Reid v. N.H. Attorney Gen., 169 N.H. 509, 532 (2016). "In interpreting provisions of the . . . Right-to-Know Law, we often look to the decisions of other jurisdictions interpreting similar provisions of other statutes for guidance, including federal interpretations of [FOIA]." 38 Endicott St. N., 163 N.H. at 660; see Murray, 154 N.H. at 581.

We first address the plaintiffs' argument that the trial court erred when it conducted the ex parte in camera hearing. The plaintiffs assert that the court erred because it is a "standard requirement that all evidence and argument presented to a judge should be presented to opposing counsel," and no statute or rule authorizes a "deviation" from that requirement in a Right-to-Know Law case. They contend that holding the hearing was antithetical to the adversarial process, and that the hearing was a fundamentally unfair and unreliable procedure because it denied them the opportunity to cross-examine the City's witnesses and highlight shortcomings in the City's evidence.

The Right-to-Know Law requires "the necessary accommodation of . . . competing interests." Clay v. City of Dover, 169 N.H. 681, 686 (2017) (quotation omitted). On one hand, when the government seeks to withhold requested documents, it has "exclusive control of vital information." Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 548 (1997). Because only the government has possession of the withheld documents, the petitioner must argue that a document is not exempt from disclosure with only "limited knowledge" of the document's contents. Id. For that reason, the government bears the burden of demonstrating that a document is exempt from disclosure, see Murray, 154 N.H. at 581, and it must provide a justification for exemption

sufficient for the trial court to determine the applicability of the claimed exemption and for the petitioner to argue against exemption with some specificity. See N.H. Housing Fin. Auth., 142 N.H. at 548-50 (explaining the purpose of a Vaughn index, a procedure often used in cases with a large number of documents potentially responsive to a Right-to-Know request, in which the government produces a general description of each document withheld and a justification for nondisclosure). Unless the government discloses "as much information as possible without thwarting the claimed exemption's purpose, the adversarial process is unnecessarily compromised." Id. at 549 (quotation omitted).

On the other hand, we have recognized that the government may take precautionary measures in order to prevent disclosure of the very information that it hopes to keep confidential. We approved the government submitting an affidavit to the court in order to justify its withholding of documents, and deemed that affidavit sufficient when it "fairly describe[d] the content of the material withheld and adequately state[d] the grounds for nondisclosure." 38 Endicott St. N., 163 N.H. at 667 (quotation and brackets omitted). We have also explained that when the government seeks to justify withholding documents under prong (A), "generic determinations of likely interference [with enforcement proceedings] often will suffice," and the government's description of the withheld information should not be so detailed "as to reveal the nature and scope of the investigation." Murray, 154 N.H. at 583. Thus, the government's justification for exemption need not be so specific as to reveal the withheld information, and the requesting party is not entitled to learn all of the information that forms the basis for the withholding. See id.

To balance these competing interests, the trial court may, in some circumstances, utilize in camera procedures before reaching a decision regarding disclosure. In Union Leader Corp. v. City of Nashua, we reviewed the trial court's denial of a Right-to-Know petition based upon prong (C) of the Murray exemption, which exempts from disclosure records or information compiled for law enforcement purposes when disclosure would "constitute an unwarranted invasion of privacy." Union Leader Corp. v. City of Nashua, 141 N.H. 473, 475 (1996) (quotation omitted). We affirmed the trial court's in camera review of the documents at issue without counsel present, explaining that "ex parte in camera review of records whose release may cause an invasion of privacy is plainly appropriate," but that this procedure should "be used cautiously and rarely." Id. at 478. We explained that, to facilitate appellate review, when the trial court conducts an in camera review under such circumstances, "a record must be taken of any hearings that are held, whether counsel for one or both parties are present." Id. (emphasis added). Accordingly, although City of Nashua involved only in camera review of documents and not an ex parte in camera hearing, we suggested that there may be circumstances when the trial court may hold an ex parte in camera hearing before applying the Murray exemption. See id.

6

Since City of Nashua, we have not addressed the use of ex parte in camera hearings in Right-to-Know Law cases. In the absence of controlling New Hampshire precedent construing RSA chapter 91-A, we look to federal FOIA cases for guidance. See 38 Endicott St. N., 163 N.H. at 660. FOIA expressly permits trial courts to examine documents in camera before determining whether they may be withheld. See 5 U.S.C. § 552(a)(4)(B) (2018). Many federal circuit courts have recognized that trial courts may utilize procedures that are "necessary to prevent the litigation process from revealing the very information the agency hopes to protect." American Civil Liberties Union v. C.I.A., 710 F.3d 422, 432-33 (D.C. Cir. 2013) (noting that, in some circumstances, a court may permit the government to submit a Vaughn index in camera). Those procedures include the consideration of ex parte affidavits and the conduct of ex parte proceedings. See, e.g., New York Times Co. v. U.S. Dept. of Justice, 806 F.3d 682, 685, 689 (2d Cir. 2015) (allowing government to present ex parte in camera oral argument to the court immediately before hearing arguments from all parties in open court); Manna v. U.S. Dept. of Justice, 51 F.3d 1158, 1163 (3d Cir. 1995) (explaining that, if public disclosure of the information needed to reach a decision would frustrate the exemption, the court may permit the government to submit sealed affidavits); Long v. United States I.R.S., 742 F.2d 1173, 1182 (9th Cir. 1984) (observing that, under certain circumstances, a court may accept "nonpublic affidavits" or "proceed ex parte to the extent it deems necessary to protect the integrity" of the information claimed to be exempt from disclosure).

At the same time, federal circuit courts emphasize that these procedures should be used in only limited circumstances, and have held that, prior to employing ex parte procedures, the trial court must first require the government to submit public affidavits or testimony providing "as detailed public disclosure as possible of the government's reasons for withholding documents." Lion Raisins v. U.S. Dept. of Agriculture, 354 F.3d 1072, 1082-84 (9th Cir. 2004) (reversing trial court's withholding of documents under law enforcement exemption where government submitted no public affidavits justifying application of the exemption and court relied solely on government's ex parte affidavit), overruled on other grounds by Animal Legal Defense Fund v. U.S. F.D.A., 836 F.3d 987, 989-90 (9th Cir. 2016); see also Lykins v. United States Dept. of Justice, 725 F.2d 1455, 1465 (D.C. Cir. 1984). Detailed public disclosure is "necessary to restore, to the extent possible, a traditional adversarial proceeding by giving the party seeking the documents a meaningful opportunity to oppose the government's claim of exemption." Lion Raisins, 354 F.3d at 1083. Only if the government's detailed public disclosures fail to "provide a sufficient basis for a decision" may the trial court accept ex parte affidavits or conduct ex parte proceedings, and it may do so only to the limited extent necessary to protect the information from disclosure. Pollard v. F.B.I., 705 F.2d 1151, 1154 (9th Cir. 1983); Long, 742 F.2d at 1182.

This approach, drawn from federal law, is consonant with our Right-to-Know Law jurisprudence.  See, e.g., N.H. Housing Fin. Auth., 142 N.H. at 551 ("In camera examination is not a substitute for the [defendant's] obligation to provide detailed public indexes and justifications whenever possible." (quotation omitted)); City of Nashua, 141 N.H. at 478 (implying that ex parte in camera hearings may be appropriate under some circumstances involving the Murray exemption).  We therefore hold that, in cases involving the Murray exemption, a trial court may exercise its discretion to hold an ex parte in camera hearing — but only after it has required the government to make as complete and detailed a public disclosure justifying exemption as possible, and determined that the disclosure nonetheless fails to provide a sufficient basis for it to make a decision.  This threshold determination will ensure that ex parte in camera hearings are "used cautiously and rarely."  City of Nashua, 141 N.H. at 478.  We will review both a trial court's finding that this threshold has been met and its decision to hold an ex parte in camera hearing under our unsustainable exercise of discretion standard.  See Larson v. Department of State, 565 F.3d 857, 869-70 (D.C. Cir. 2009) (reviewing trial court's decision about whether to conduct in camera review of documents and ex parte declaration for abuse of discretion); State v. Lambert, 147 N.H. 295, 296 (2001) (explaining that we refer to the abuse of discretion standard as the unsustainable exercise of discretion standard and describing the requirements of that standard).

The plaintiffs argue that, although federal cases such as New York Times Co. support the proposition that a court may conduct an ex parte in camera hearing under certain circumstances, those cases are distinguishable because they involve national security concerns that are not present here.  The plaintiffs contend that, although a court may hold an ex parte in camera hearing when the withheld documents contain highly sensitive national security information, such as information regarding terrorism investigations, the information withheld in this case does not warrant such protection.  We are not persuaded.

The government is not required to publicly disclose information that would undermine the very purpose of the exemption, see N.H. Housing Fin. Auth., 142 N.H. at 549, and procedures such as ex parte hearings and affidavits are designed to safeguard the interests protected by the exemption, while still providing the court with a "reasonable basis to evaluate the claim of privilege."  American Civil Liberties Union, 710 F.3d at 432-33 (quotation omitted); see New York Times Co., 806 F.3d at 689.  Regardless of whether the government claims exemption for national security or law enforcement reasons, an ex parte in camera hearing is sometimes necessary to "accommodat[e] . . . the competing interests involved."  Clay, 169 N.H. at 686 (quotation omitted); see Manna, 51 F.3d at 1164-65 (concluding, based in part on government's ex parte affidavits, that requested documents were exempt from disclosure because disclosure could reasonably be expected to interfere with law enforcement proceedings).

Having articulated the applicable standard, we now analyze whether the court erred when it conducted the ex parte in camera hearing in this case. Prior to the ex parte in camera hearing, the City had publicly disclosed a partially redacted copy of the "License & Services Agreement" between the City and the equipment vendor. In its response to the plaintiffs' requests, the City explained that the redacted portions of the agreement contained "confidential information relative to surveillance technology," and asserted that disclosure "could compromise the effectiveness of the technology and allow individuals who are the subjects of investigations to employ countermeasures." The City subsequently filed a public affidavit from the Chief of Police, in which he asserted that disclosure of the redacted information "could tip off those persons who are subject to the pending investigations as to the strategy in implementing the specific techniques in the investigations," and provide "those who wish to engage in criminal activity with the ability to adjust their behaviors in an effort to avoid detection." In effect, through the Chief's affidavit and during the hearing on the City's motion for an ex parte in camera hearing, the City represented that additional public disclosure of the reasons for the redactions would undermine the interests protected by the Murray exemption.

After its review of this information and the unredacted agreement, the trial court concluded that the City's representations and public disclosures were inadequate to justify the redactions, and that "it need[ed] further information before reaching a decision." The trial court therefore granted the City's motion for an ex parte in camera hearing. In making that determination, the court credited the City's claims that additional public disclosure of the reasons for the redactions might undermine the purpose of the claimed exemptions. See 38 Endicott St. N., 163 N.H. at 659, 666-68 (ruling that documents related to State Fire Marshal's investigation of a fire were exempt from disclosure under Murray prong (A) based upon representations made in fire investigator's affidavit, which "the trial court was entitled to credit"); Citizens for Resp. & Ethics v. Dept. of Justice, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (observing that courts "give deference to an agency's predictive judgment of the harm that will result from disclosure"); Long, 742 F.2d at 1182 (explaining that, in cases involving "sensitive areas" such as national security and law enforcement, "courts have accorded special deference to an agency's detailed affidavits"). The court also considered the possibility of holding a closed hearing with only counsel for all parties present, but rejected that approach due to the "sensitive nature of the information in question," and the potential for harm if the court did not "keep disclosure of the information to a minimum."

We conclude that the trial court satisfied the standard we set forth above: as a threshold matter, the court required the City to make as detailed a public disclosure as possible without compromising the purpose of the claimed exemption, and it then concluded that the public disclosure was insufficient for

9

it to reach a decision. After the court observed that <u>ex parte</u> proceedings should rarely be used, it reasoned that, because it could not reach a decision "without learning more about . . . the covert communications equipment," and due to the risks posed by additional public disclosure, an <u>ex parte in camera</u> hearing was appropriate. Under these circumstances, we conclude that the trial court's decision to conduct an <u>ex parte in camera</u> hearing was a sustainable exercise of discretion.

Nonetheless, we take this occasion to emphasize that <u>ex parte in camera</u> hearings "should be used cautiously and rarely." <u>City of Nashua</u>, 141 N.H. at 478. If a trial court is unsatisfied with a defendant's public disclosures, it may "require [the defendant] to submit more detailed public affidavits before resorting to <u>in camera</u> review" of the withheld documents or <u>ex parte</u> affidavits. <u>Pollard</u>, 705 F.2d at 1154. Trial courts should also carefully consider whether other steps short of an <u>ex parte in camera</u> hearing — such as holding a closed hearing with only counsel present, or with only counsel and all parties present — would "accommodat[e] . . . the competing interests involved." <u>Clay</u>, 169 N.H. at 686.

Having affirmed the trial court's decision to conduct the <u>ex parte in camera</u> hearing, we now turn to the court's ruling that the redacted information is exempt from disclosure under prongs (A), (E), and (F) of the <u>Murray</u> exemption. <u>See</u> <u>Murray</u>, 154 N.H. at 582. The plaintiffs are in a difficult position because they have not had access to the unredacted agreement. They do not dispute that the redacted information was "compiled for law enforcement purposes," <u>id</u>.; however, they argue that the City failed to meet its burden of demonstrating that the redacted information is exempt from disclosure under any of the three identified prongs of the <u>Murray</u> exemption. They contend that any harm that could result from disclosure is speculative, that the City's public explanations for exemption were conclusory, and that the information withheld by the City is materially different from the information that we ruled was exempt from disclosure in <u>Montenegro</u>. The City counters that it met its burden of demonstrating that all of the redacted information is exempt under prongs (A), (E), or (F) of the <u>Murray</u> exemption.

We note that both parties make blanket arguments regarding the redacted information — the City asserts that all of the redactions are justified, while the plaintiffs contend that none of them are. But whether the City met its burden as to the redacted information is not an all-or-nothing proposition. Our task is to examine each redaction in turn in light of the applicable law. After doing so, we conclude that the trial court did not err in ruling that the following information is exempt from disclosure under prong (E) of the <u>Murray</u> exemption: the name of the vendor, the nature of the equipment, the type of information gathered by the vendor, and how the vendor uses that information. And we affirm, by an equally divided court, the trial court's nondisclosure of the choice-of-law provision. However, we also conclude that the court erred in

10

upholding the redaction of a clause in the agreement giving the vendor certain rights should the possibility of public disclosure of the technology arise. That provision of the agreement shall be disclosed on remand.

We first address the redactions concerning the name of the vendor, the nature of the equipment, the type of information gathered by the vendor, and how the vendor uses that information. In Montenegro, we considered the extent to which the City of Dover could withhold information about the nature and implementation of surveillance equipment that it used for law enforcement purposes. See Montenegro, 162 N.H. at 643. Looking to federal cases construing FOIA for guidance, we explained that information is exempt from disclosure under prong (E) if disclosure "could lead to decreased effectiveness in future investigations by allowing potential subjects to anticipate and identify [investigation] techniques as they are being employed." Id. at 647 (quotations omitted). We therefore concluded that "the precise locations of the City's surveillance equipment, the recording capabilities for each piece of equipment, the specific time periods each piece of equipment [was] expected to be operational, and the retention time for any recordings" were exempt from disclosure under prong (E) because that information was "of such substantive detail that it could reasonably be expected to risk circumvention of the law by providing those who wish to engage in criminal activity with the ability to adjust their behaviors in an effort to avoid detection." Id. at 647-48.

Montenegro establishes that information may be exempt from disclosure under prong (E) even if it is not certain that disclosure would result in circumvention of the law. Rather, information is exempt if disclosure "could lead to decreased effectiveness in future investigations" by providing those who wish to engage in criminal activity with the "ability" to avoid detection. Id. (quotation omitted and emphasis added). The federal courts have similarly recognized that, under FOIA, information may be exempt under prong (E) even if it is not certain that disclosure would result in circumvention of the law. The federal courts have explained that prong (E) "sets a relatively low bar for the agency to justify withholding." Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011). Prong (E) requires only that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law. Mayer Brown LLP v. I.R.S., 562 F.3d 1190, 1193-94 (D.C. Cir. 2009) (ruling that information about what the IRS considered to be acceptable settlement ranges for tax evasion was exempt because disclosure might lead some taxpayers to conclude that the financial benefits of evasion would outweigh the risks from being caught). Thus, to meet its burden, the City was required to establish only that disclosure could reasonably be expected to risk circumvention of the law.

We have reviewed the unredacted agreement and the transcript of the ex parte in camera hearing. We agree with the trial court that disclosing the name of the vendor, the nature of the equipment, the type of information

11

gathered by the vendor, and how the vendor uses that information, could reasonably be expected to risk circumvention of the law by allowing individuals to learn about the surveillance technology and take evasive measures against it.  See Montenegro, 162 N.H. at 647-48.  The surveillance technology at issue here was described by the trial court as a "confidential technique," unlike the surveillance cameras at issue in Montenegro.  See id. at 643; see also ACLU of Northern CA v. U.S. Dept. of Justice, 880 F.3d 473, 491 (9th Cir. 2018) (explaining that prong (E) of FOIA's law enforcement exemption "exempts investigative techniques not generally known to the public" (quotation omitted)).  Moreover, even if the surveillance technology were publicly known as a law enforcement technique, the redacted material would still be exempt because it would reveal the specific means by which the technology is employed by the City.  See ACLU of Northern CA, 880 F.3d at 491; see also Blackwell, 646 F.3d at 42 (specific techniques used by FBI to conduct forensic computer examinations were exempt from disclosure).  Accordingly, the redacted information that falls within the categories listed above is exempt from disclosure.

In addition, as to the choice-of-law provision, the court is equally divided as to whether the City met its burden of proving that the provision is exempt from disclosure under prongs (A), (E), or (F) of the Murray exemption.  Therefore, the trial court's ruling that this information is exempt from disclosure is affirmed.  See PK's Landscaping, Inc. v. N.E. Telephone Co., 128 N.H. 753, 754, 758 (1986) (affirming, by an equally divided court, order granting summary judgment).

However, as to one specific provision, we conclude that the trial court erred when it found that the City had met its burden to justify nondisclosure.  See Reid, 169 N.H. at 532.  The City failed to offer, in either its public disclosures or at the ex parte hearing, any rationale for the redaction of a clause in the agreement giving the vendor certain rights should the possibility of public disclosure of the technology arise.  Given the City's failure to carry its burden as to this provision, the trial court committed error in ruling that the provision was exempt from disclosure.  When, after receiving adequate notice and having multiple opportunities to justify withholding the information, a public entity fails to meet its burden, disclosure of the withheld information is appropriate.  See N.H. Housing Fin. Auth., 142 N.H. at 551-52 (affirming trial court's decision to order summary disclosure of documents inadequately described in Vaughn index, when party had repeatedly failed to comply with court's order to produce an adequate index).  Accordingly, we remand to the trial court and order that the clause described above be disclosed.

Finally, two of the redactions contain information that the City subsequently disclosed in its responses to the plaintiffs' Right-to-Know requests and in the Chief's affidavit.  Accordingly, the City has waived its right

to claim that the information is exempt from disclosure, and we order that the information be disclosed on remand.  See American Civil Liberties Union, 710 F.3d at 426 (recognizing that, under FOIA, "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information").

Affirmed in part; reversed in part; and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.