Merrimack
No. 2011-502

## 38 ENDICOTT STREET NORTH, LLC

### v.

## STATE FIRE MARSHAL, NEW HAMPSHIRE DIVISION OF FIRE SAFETY

Argued: February 16, 2012
Opinion Issued: May 22, 2012

658

*Tarbell & Brodich Professional Association,* of Concord (*Friedrich K. Moeckel* on the brief and orally), for the petitioner.

*Michael A. Delaney,* attorney general (*David M. Hilts,* assistant attorney general, on the memorandum of law and orally), for the respondent.

LYNN, J. The petitioner, 38 Endicott Street North, LLC, appeals an order of the Superior Court (*McNamara,* J.) dismissing its petition under the Right-to-Know Law and denying its request for attorney's fees. *See* RSA ch. 91-A (2001 & Supp. 2011). We affirm.

The following facts are supported by the record. The petitioner owns the Wide Open Restaurant, Hotel and Saloon located in Laconia. On September 17, 2010, a fire occurred at the property. The State Fire Marshal's Office (the FMO) is investigating the fire.

On April 8, 2011, the petitioner sent the respondent, the State Fire Marshal, head of the New Hampshire Division of Fire Safety (the Fire Marshal), a letter requesting to inspect all records, information, and documents (the materials) related to the September 17th fire and the "investigation thereof." The petitioner did not receive a response, and on May 3, 2011, sent a second letter demanding a response. On May 5, 2011, the Fire Marshal replied, disclosing the Incident Initiation Report and its supplement, but withholding all other materials because the investigation was ongoing.

On May 6, 2011, the petitioner filed a petition seeking an injunction directing the Fire Marshal to produce the undisclosed materials pursuant to RSA chapter 91-A, the New Hampshire Right-to-Know Law. The petitioner also requested attorney's fees and costs. The Fire Marshal responded that the undisclosed materials are excluded from the Right-to-Know Law under the exemption for records "compiled for law enforcement purposes." The petitioner argued that the Fire Marshal is not a law enforcement officer and, therefore, the material was not compiled "for law enforcement purposes." On June 6, 2011, the Fire Marshall disclosed additional materials that the FMO had determined could be segregated from the records asserted to be exempt. After a hearing on June 7, 2011, the trial court ruled that the withheld records were exempt from the

Right-to-Know Law, denied the petition, and also denied the petitioner's request for attorney's fees and costs.

On appeal, the petitioner argues that the trial court erred in ruling that the materials were compiled for law enforcement purposes and that disclosure could reasonably be expected to interfere with law enforcement proceedings. The petitioner also argues that the trial court erred in denying its requests for an *in camera* review of the materials or the compilation of a *Vaughn* index, as well as in denying its motion for attorney's fees and costs.

*I. The Murray Exemption*

■ The Right-to-Know Law guarantees "[e]very citizen . . . the right to inspect . . . and copy" all public records, with certain limited exceptions. RSA 91-A:4. "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." *Murray v. N.H. Div. of State Police*, 154 N.H. 579, 581 (2006) (quotation omitted). It thus furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted. *Id.*; *see also* N.H. CONST. pt. I, art. 8. Although the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives. *Murray*, 154 N.H. at 581.

■ We review the trial court's interpretation of the Right-to-Know Law and its application of the law to undisputed facts *de novo*. *See id.* We construe provisions favoring disclosure broadly, while construing exemptions narrowly. *Id.* A public entity seeking to avoid disclosure under the Right-to-Know Law "bears a heavy burden to shift the balance toward nondisclosure." *Id.* In interpreting provisions of the New Hampshire Right-to-Know Law, we often look to the decisions of other jurisdictions interpreting similar provisions of other statutes for guidance, including federal interpretations of the federal Freedom of Information Act (FOIA). *See id.* at 581, 583; *Lamy v. N.H. Pub. Utils. Comm'n*, 152 N.H. 106, 111 (2005).

■ Although RSA chapter 91-A does not explicitly address the treatment of requests for law enforcement records or information, we have adopted the test embodied in exemption 7 of the FOIA at 5 U.S.C. § 552(b)(7) (2006). *Lodge v. Knowlton*, 118 N.H. 574, 576-77 (1978); *Murray*, 154 N.H. at 582; *Montenegro v. City of Dover*, 162 N.H. 641, 645-46 (2011) (explaining that in *Murray*, we amended the test adopted in *Lodge* to be

consistent with the 1986 amendment to exemption 7 of the FOIA). Under the exemption, which we have deemed the *Murray* exemption, "records or information compiled for law enforcement purposes" are exempt from disclosure, but only to the extent that the production of such records or information:

> "(A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency·or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual . . . ."

*Murray*, 154 N.H. at 582 (quoting 5 U.S.C. § 552(b)(7)). Thus, the *Murray* exemption requires a two-part inquiry. *See Montenegro*, 162 N.H. at 646; *accord FBI v. Abramson*, 456 U.S. 615, 622 (1982). First, the entity seeking to avoid disclosure must establish that the requested materials were "compiled for law enforcement purposes." *Montenegro*, 162 N.H. at 646 (quotation omitted); *accord Abramson*, 456 U.S. at 622. Second, if the entity meets this threshold requirement, it must then show that releasing the material would have one of the six enumerated adverse consequences. *Montenegro*, 162 N.H. at 646; *accord Abramson*, 456 U.S. at 622. Here, the petitioner argues that the Fire Marshal has not satisfied either requirement.

### A. Compiled for Law Enforcement Purposes

■ We first consider whether the undisclosed records were compiled for law enforcement purposes. Below and on appeal, both parties have primarily focused upon whether the FMO is a law enforcement agency. Similarly, the trial court based its determination that the records were compiled for law enforcement purposes on the fact that the Fire Marshal "is indeed a law enforcement officer." However, the exemption does not

apply exclusively to law enforcement *officers* or *agencies*, but rather applies to all records and information compiled, by any type of agency, for law enforcement *purposes*. *See Montenegro*, 162 N.H. at 645-46; *Murray*, 154 N.H. at 582. Because we have never before addressed how to determine whether records were "compiled for law enforcement purposes," we begin by reviewing relevant federal law.

■ In assessing whether records were compiled for law enforcement purposes, federal courts follow "several overarching principles." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 76-77 (D.C. Cir. 2002). First, the phrase "law enforcement purposes" includes both civil and criminal matters. *Id.* at 77. Second, determining whether this requirement is satisfied "demands careful analysis of the authorized activities of the agency involved." *Kay v. F.C.C.*, 867 F. Supp. 11, 17 (D.D.C. 1994). Third, although the exemption "makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions," federal courts apply a different standard depending on the type of agency seeking to avoid disclosure. *Tax Analysts*, 294 F.3d at 77.

Where the agency claiming the exemption is primarily a "law enforcement agency," federal courts have applied a less demanding standard. Several circuits have adopted a *per se* rule, under which *all* records compiled by law enforcement agencies inherently qualify as records "compiled for law enforcement purposes." *See, e.g., Jones v. F.B.I.*, 41 F.3d 238, 245-46 (6th Cir. 1994); *Williams v. F.B.I.*, 730 F.2d 882, 883-86 (2d Cir. 1984); *Irons v. Bell*, 596 F.2d 468, 472-76 (1st Cir. 1979). Other circuits employ a "rational nexus" test, which requires agencies to meet a higher burden than does the *per se* rule, but which nonetheless gives deference to agencies whose primary function is law enforcement. *See Pratt v. Webster*, 673 F.2d 408, 413-21 (D.C. Cir. 1982); *Abdelfattah v. United States Dept. of Homeland Sec.*, 488 F.3d 178, 184-86 (3d Cir. 2007); *Church of Scientology of California, Etc. v. United States Dept.*, 611 F.2d 738, 748 (9th Cir. 1979). The "rational nexus test" requires law enforcement agencies to establish a rational nexus between the records they seek to withhold and their authority to enforce a statute or regulation. *See Church of Scientology of California*, 611 F.2d at 748. While courts applying the rational nexus test do consider the type of agency involved, ultimately "it is the purpose of the record, not the role of the agency, that is determinative." *Allnutt v. United States Dept. of Justice*, 99 F. Supp. 2d 673, 680 (D. Md. 2000).

■ Both the *per se* approach and the rational nexus approach also permit agencies with mixed functions, encompassing both administrative and law enforcement duties, to claim the exemption. *See Jordan v. United States Dept. of Justice*, 668 F.3d 1188, 1197 n.5 (10th Cir. 2011) ("The per se rule

[also] permits agencies whose primary function is not law enforcement to rely on [the exemption].'"); *Irons*, 596 F.2d at 473 ("At best, we glean that the requirement of a law enforcement purpose serves as a condition on [the exemption] when an agency has both administrative and enforcement functions."). Under either approach, where the agency involved is a mixed-function agency, the entity seeking to avoid disclosure must satisfy a higher burden to establish that the requested materials were "compiled for law enforcement purposes." Generally, a mixed-function agency "must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document[s]." *Church of Scientology of California*, 611 F.2d at 748; *cf. Jordan*, 668 F.3d at 1197 n.5 (explaining that under the per se rule, mixed-function agencies can claim the exemption, but "they will not benefit from the [presumption granted to law enforcement agencies under the] per se rule"; court declined, however, to advance any "theory as to what burden such agencies bear in establishing that records or information were compiled for law enforcement purposes").

We have never addressed whether we follow the *per se* approach or the rational nexus approach under the *Murray* exemption. Before determining which approach to follow in this case, however, we must first consider whether the FMO is "primarily a law enforcement agency" or a "mixed-function agency."

■ "There appears to be no defined test for determining whether an agency is primarily a law enforcement agency." *Jordan*, 668 F.3d at 1194; *accord Birch v. United States Postal Service*, 803 F.2d 1206, 1210 (D.C. Cir. 1986) ("[T]he Postal Service obviously is a mixed-function agency . . . ."); *Luzaich v. United States*, 435 F. Supp. 31, 34 (D. Minn. 1977) (stating that the "I.R.S. clearly is" a law enforcement agency). However, courts appear to examine an agency's statutory duties to make the determination. *See Church of Scientology Intern. v. United States I.R.S.*, 995 F.2d 916, 919 (9th Cir. 1993) (holding that the Exempt Organization division of the Internal Revenue Service "performs a law enforcement function by enforcing the provisions of the federal tax code that relate to qualification for tax exempt status"); *cf. Center for Nat. Pol. Rev. on Race & Urb. Is. v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that the U.S. Department of Health, Education, and Welfare exercises a law enforcement function when it makes administrative determinations of ineligibility for governmental benefits).

The Fire Marshal's powers and duties, and the existence of the FMO, are designated by statute. *See* RSA 153:4-a (2002) (describing the Fire Marshal's powers and duties); RSA 153:8 (2002) ("There shall be appointed to the office of the state fire marshal such deputy state fire marshals as the

state fire marshal shall request . . . ."). The Fire Marshal is "responsible for supervising and enforcing all laws of the state relative to the protection of life and property from fire, fire hazards and related matters." RSA 153:4-a, I. All fires must be reported in writing to the Fire Marshal, and the report must include: a statement of facts relating to the cause and origin of the fire to the extent possible, the extent of damage to the property, and the insurance upon the property. RSA 153:11 (2002). The Fire Marshal then has "the option and authority to submit his findings of facts [regarding a particular fire] to the state police, county attorney or local authorities who may *assist him* in the matter in arrest or prosecution." *Id.* (emphasis added). The Fire Marshal is also required to "[supervise] and [enforce] local laws, bylaws, and ordinances where existent, relative to" the prevention of fires and other fire safety matters. RSA 153:4-a, I. The Fire Marshal is also responsible for "[coordinating] the activities of his office[,] . . . [and assisting] . . . the officials responsible . . . for the organization and efficient operation of fire departments." RSA 153:4-a, II.

 The petitioner first argues that the *Murray* exemption was adopted for police and, therefore, does not apply to non-police entities. This assertion is not supported by our case law or case law from other jurisdictions. That we originally adopted the exemption when the records were sought from the police does not mean that other entities cannot also invoke the exemption. Further, federal courts routinely apply exemption 7 from the FOIA to non-police entities. *See, e.g., Miller v. United States Dept. of Agriculture*, 13 F.3d 260, 263 (8th Cir. 1993) (U.S. Department of Agriculture); *Birch*, 803 F.2d at 1209-11 (D.C. Cir. 1986) (U.S. Postal Service).

The petitioner next argues that the FMO is not a law enforcement agency because the Fire Marshal is not a "law enforcement officer" since he does not have the power of arrest, and, therefore, the records were not "compiled for law enforcement purposes." This argument is misplaced. The relevant issue is not whether the Fire Marshal is a "law enforcement officer," but whether the FMO is primarily a law enforcement agency, a mixed-function agency with some law enforcement functions, or neither. *See Church of Scientology Intern.*, 995 F.2d at 919; *Heggestad v. U.S. Dept. of Justice*, 182 F. Supp. 2d 1, 13 (D.D.C. 2000). We acknowledge that the FMO cannot be characterized as "primarily a law enforcement agency." However, contrary to the petitioner's arguments, the fact that the FMO is not a "law enforcement agency" does not necessarily mean that the records were not "compiled for law enforcement purposes." While the characterization of the agency guides the determination, it alone is not dispositive.

█ Although the FMO is not "primarily a law enforcement agency," it clearly has some law enforcement functions and is, therefore, a mixed-function agency. For example, the Fire Marshal not only receives reports on all fires, but also has the authority to further "investigate or cause to be investigated, the cause, circumstances, and origin of any fire." RSA 153:18 (2002). Upon suspecting or finding criminal violations, the Fire Marshal may submit his findings to the state police, county attorney, or local authorities for "[assistance] in the matter in arrest or prosecution." RSA 153:11. We adopt the approach taken by most federal courts, under which, as the head of a mixed-function agency, the Fire Marshal can satisfy the threshold requirement by showing that the pertinent records were compiled pursuant to the agency's law enforcement functions, as opposed to administrative functions. Accordingly, we need not decide what test we would apply to an agency whose primary function is law enforcement.

█ In this case, the trial court made no findings regarding the purpose for which the withheld records were compiled. Even so, it is clear from the record and the trial court's other findings that the requested records were compiled during an investigation into potential criminal wrongdoing pursuant to the Fire Marshal's law enforcement duties and, therefore, were compiled for law enforcement purposes. First, the trial court implicitly determined that the Fire Marshal was acting pursuant to law enforcement duties when it credited an affidavit from Fire Investigator William Clark in which he stated "that he has . . . 'reasonable belief that this investigation will lead to criminal charges.' " Next, in determining whether an *in camera* review, or a *Vaughn* index, was required, the trial court explained that the Fire Marshal "precisely define[d] the nature of the documents, [and] explain[ed] how disclosure of such documents could interfere with the investigation." These findings, in combination with the record before us, compel the conclusion that the records were compiled pursuant to the Fire Marshal's law enforcement functions and were, accordingly, "compiled for law enforcement purposes."

### B. Adverse Consequences of Disclosure

█ Because the Fire Marshal satisfied the threshold requirement, we next consider whether the Fire Marshal proved that one of the six adverse consequences would follow from disclosure. This case involves prong (A) of the *Murray* exemption: interference with enforcement proceedings. To show that this adverse consequence would result from disclosure, an agency must show that "enforcement proceedings are pending or reasonably anticipated" and that "disclosure of the requested documents could reasonably be expected to interfere with those proceedings." *Murray*, 154 N.H. at 582-83.

The petitioner argues that the Fire Marshal did not provide sufficient evidence that enforcement proceedings are pending or reasonably anticipated, and that disclosure could reasonably be expected to interfere with those proceedings. We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. *Wyle v. Lees*, 162 N.H. 406, 413 (2011).

■ The petitioner first claims that "other than bald assertions, the Fire Marshal provides no evidence that enforcement proceedings could be reasonably expected." According to the petitioner, the Fire Marshal did not establish that proceedings were reasonably anticipated because the affidavit of Fire Investigator William Clark "does not provide the basis for when or why the charges might arise or by whom or where." However, the *Murray* exemption does not require that the agency explain when, where, or by whom charges might arise. *See Murray*, 154 N.H. at 583-84. It does not even require that the agency establish that law enforcement proceedings are a certainty. *Id.* at 583. It merely requires the agency to demonstrate that law enforcement proceedings are "reasonably anticipated." *Id.*

■ In this case, the Fire Marshal provided the affidavit from Investigator Clark as evidence that proceedings are reasonably anticipated. In the affidavit, Investigator Clark specifically stated that "[t]he [f]ire investigation is open and ongoing . . . [and] I have a reasonable belief that this investigation will lead to criminal charges." Investigator Clark also explained how disclosure would interfere with the ongoing investigation and any future prosecution, and he set forth particular categories of documents. For example, Investigator Clark explained:

a. Revealing . . . information publicly would 1.) alert person(s) of interest to our interest and make it harder to gain her or his cooperation; 2.) enable person(s) of interest to use what other witnesses have said to cover their tracks or to muddy the waters; . . . and 8.) . . . taint the credibility of witnesses that become aware of the other witnesses statements by bringing into question whether what they recall is their own recollection or has been tainted by what they have heard that someone else reported.

b. Revealing contacts and interviews related to leads that are not believed to be involved in any possible criminal activity at this time would also damage our investigative ability and ultimately the ability to prosecute any case because 1.) this information could be used by anyone that was a legitimate suspect to divert attention from themselves, and 2.) revealing what other witnesses have said

can taint the credibility of witnesses that become aware of the other witnesses statements by bringing into question whether what they recall is their own recollection or has been tainted by what they have heard that someone else reported.

c. . . . Depending on [the defendant's claims or defenses against charges] information or evidence that seemed unimportant at an earlier time could become very important during the prosecution phase of the case.

 Federal courts have recognized that the disclosure of information may interfere with enforcement proceedings by "[resulting] in destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998); *accord Barney v. I.R.S.*, 618 F.2d 1268, 1273 (8th Cir. 1980) (explaining that one of the primary purposes of exemption 7 of the FOIA is to prevent harm to the government's case in court "by not allowing litigants earlier or greater access to agency . . . files than they would otherwise have" (quotations omitted)). Investigator Clark's affidavit "fairly describe[s] the content of the material withheld and adequately [states the] grounds for nondisclosure, and those grounds are reasonable and consistent with the applicable law." *Barney*, 618 F.2d at 1274 (quotation omitted). As the Fire Marshal points out, the trial court was entitled to credit this affidavit. *See id.* at 1274; *Lewis v. I.R.S.*, 823 F.2d 375, 378-79 (9th Cir. 1987).

The petitioner's remaining arguments that enforcement proceedings cannot be "reasonably anticipated" are either inadequately developed, *see In the Matter of Martel & Martel*, 157 N.H. 53, 64 (2008), or based upon a mischaracterization of the affidavit. Specifically, the petitioner claims that the affidavit "avers to the potential of an *investigation* as opposed to the required potential of a *proceeding*." However, this is not accurate. The affidavit specifically says that "the [f]ire investigation is open and *ongoing*,"and explains that "it is important to protect the integrity of [the] investigation and the viability of any *potential prosecution* by maintaining the secrecy of the *ongoing investigation*." (Emphasis added.)

The affidavit submitted by the Fire Marshal "contain[s] reasonably detailed descriptions of the documents and allege[s] facts sufficient to establish [the] exemption." *Lewis*, 823 F.2d at 378. Accordingly, the trial court's ruling that the Fire Marshal demonstrated that disclosure of the requested records "could reasonably be expected to interfere with enforcement proceedings" was not error. Because both prongs of the two-part

inquiry required to invoke the *Murray* exemption are satisfied, we affirm the trial court's ruling that the requested records are exempt from disclosure.

### C. *Vaughn Index or In Camera Review*

The petitioner also argues that in determining whether the requested records were exempt from disclosure under *Murray*, the trial court should have either conducted an *in camera* review of the records or required the Fire Marshal to produce a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820, 826-28 & nn. 20-21 (D.C. Cir. 1973).

■■■ "While an *in camera* review or the preparation of a *Vaughn* index may be sufficient to justify an agency's refusal to disclose, such measures are also not necessarily required." *Murray*, 154 N.H. at 583. In most cases involving prong (A) of the *Murray* exemption, "generic determinations of likely interference often will suffice." *Id.*; *accord Curran v. Department of Justice*, 813 F.2d 473, 475 (1st Cir. 1987) (explaining that the use of a *Vaughn* index "is simply not a practicable approach" in cases invoking exemption 7(A) of the FOIA). Such "generic determinations" should be justified for each category of document, rather than file-by-file, and "[t]he categorization should be clear enough to permit a court to ascertain how each category of documents, if disclosed, could interfere with the investigation." *Murray*, 154 N.H. at 583.

■■■ Here, the petitioner argues that "[a]lthough *Murray* permits . . . categorical identification of the records sought, the Fire Marshal's categorical identification violates" *Murray* because it is too general. However, *Murray* requires only that the categories be "distinct enough to allow meaningful judicial review." *Id.* It does not require that the categories of documents be "so distinct as to reveal the nature and scope of the investigation." *Id.* Investigator Clark's affidavit breaks the records down into twelve categories, provides an explanation of each category, and states how disclosure of the records within that category would interfere with enforcement proceedings and whether the category is segregable. Some of the categories include "photographs," "maps and diagrams," and "witness interviews/statements."

The petitioner argues that the categorization within the affidavit is too broad and that, based upon *Murray*, categories such as "photographs," "maps and diagrams," and "witness interviews/statements" are too general. *See id.* at 584. The petitioner is correct that in *Murray*, we rejected "the broad terms 'photographs,' 'correspondence (letters and e-mails),' 'maps and diagrams' and 'tax records.' " *Id.* However, unlike that which was presented in this case, the agency seeking to avoid disclosure in *Murray*

presented the court with only a one-page document delineating twenty categories of information "without *any* annotations or explanations." *Id.* (emphasis added). Moreover, in *Murray* we specifically stated that "additional explanation might have allowed the respondents to meet their burden . . . [but they] offered no affidavits, testimony, or other evidence which . . . defined these categories more precisely [or] . . . explained how disclosure of the information within these categories could interfere with any investigation or enforcement." *Id.*

Here, the Fire Marshal did exactly what was required under *Murray* — he provided an affidavit that defined the categories with some specificity and explained how disclosure within each category could interfere with the investigation or prosecution. Where the agency has sustained its burden of proof by affidavit or testimony, the trial court need not undertake an *in camera* inspection or order a *Vaughn* index. *See Lewis*, 823 F.2d at 378.

*II. Attorney's Fees and Costs*

In addition to requesting that the trial court order the Fire Marshal to produce the undisclosed records, the petitioner also requested attorney's fees and costs, *see* RSA 91-A:8, I. Pursuant to RSA 91-A:8, I, an agency "shall be liable for reasonable attorney's fees and costs incurred" if the trial court finds that: (1) the agency violated any provision of RSA chapter 91-A; (2) the lawsuit "was necessary in order to make the information available"; and (3) the agency knew or should have known that the conduct engaged in was a violation of RSA chapter 91-A.

The trial court denied the petitioner's request for attorney's fees and costs "[b]ecause this lawsuit was not necessary to make any information available." On appeal, the petitioner argues that attorney's fees and costs should have been awarded because the Fire Marshal did not respond to its April 8th request for records in violation of RSA 91-A:4, IV, the provision of the Right-to-Know Law requiring all public agencies to respond to a request for records within five business days. However, even if the Fire Marshal did violate RSA 91-A:4, IV, the trial court would be required to award attorney's fees and costs only if the proceedings below were necessary to make the information available. The trial court specifically found that the proceedings were not necessary to make the information available, and the petitioner does not argue otherwise. We, therefore, uphold the trial court's denial of the petitioner's request for attorney's fees and costs.

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.