NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2016-0702

DAVID K. TAYLOR

v.

SCHOOL ADMINISTRATIVE UNIT #55

Submitted: June 21, 2017
Opinion Issued: September 21, 2017

David K. Taylor, self-represented party, by brief.

Drummond Woodsum & MacMahon, of Portsmouth (Demetrio F. Aspiras and James A. O'Shaughnessy on the brief), for the defendant.

LYNN, J. The plaintiff, David K. Taylor, appeals a decision of the Superior Court (Anderson, J.) entering judgment in favor of the defendant, School Administrative Unit #55 (SAU), in the plaintiff's Right-to-Know lawsuit. See RSA ch. 91-A (2013 & Supp. 2016). He argues that the trial court erred in interpreting certain provisions of RSA chapter 91-A and erroneously concluded that the SAU's policy for transmitting public records complied with the statute. We affirm.

The pertinent facts are as follows. On May 12, 2016, the SAU's Board (the Board) held a regularly-scheduled meeting. During the meeting, the Board

voted to go into nonpublic session to discuss two topics: the superintendent's evaluation, and "emergency functions." While in nonpublic session, the Board voted to seal the minutes of the meeting.

In June 2016, the plaintiff asked the executive assistant to the superintendent to send him the minutes of the May 12 nonpublic session by e-mail. She informed the plaintiff that she could not provide him with those minutes because they were sealed. On July 15, the plaintiff e-mailed the executive assistant again, asking her to forward to him, by e-mail, a June 22 e-mail regarding the nonpublic session that had been sent to the Board. The executive assistant again denied the plaintiff's request, referring him to the SAU's Right-to-Know procedure. The procedure requires members of the public seeking electronic records to come to the SAU's offices with a thumb drive in sealed, original packaging or to purchase a thumb drive from the SAU at its actual cost of $7.49.

In August, the plaintiff filed a complaint in the trial court in which he alleged that the SAU had violated RSA chapter 91-A by voting in closed session to seal the minutes of the nonpublic session of the May 12 meeting and by refusing to forward to him, by e-mail, the records he requested. He also challenged the SAU's practice of charging 50 cents per page for hard copies of public records. The plaintiff sought the following relief: invalidation of the vote to seal the minutes of the nonpublic session; release of the sealed minutes; a declaration that the SAU's thumb drive policy violates RSA chapter 91-A; an order requiring transmission of the requested records to him by e-mail; other injunctive relief; and litigation costs.

After the complaint was filed, the SAU acknowledged that the Board had violated RSA 91-A:3, III, which requires that votes to seal minutes of nonpublic sessions be "taken in public session." RSA 91-A:3, III (Supp. 2016). On August 29, the Board voted, in a public session, to seal only the portion of the nonpublic session concerning emergency functions. The portion of the minutes regarding the evaluation of the superintendent was released, with one sentence redacted.

Following a hearing, the trial court ruled that the SAU's policy for transmitting public records complied with RSA chapter 91-A. Because of the SAU's decision to keep sealed only the portion of the nonpublic session with respect to emergency functions, the trial court also found that the plaintiff's challenge of the SAU's action was "moot in all but one respect," specifically, the single redacted sentence of the superintendent's evaluation. On this issue, the court ordered that the SAU provide it with an un-redacted copy of the public minutes for in camera review.

The trial court also determined that the petitioner's lawsuit had been necessary to ensure the Board's compliance with RSA 91-A:3, and, therefore,

awarded him litigation costs.  However, the trial court ruled that the plaintiff had no standing to challenge the cost of paper copies, because there was no evidence that he had asked for, or paid for, such copies.  The trial court also found that the Board did not violate RSA 91-A:3, III by producing two sets of minutes for the May 12 meeting, one containing the public portion and the other the sealed portion.  Finally, the court declined to enter the injunctive relief sought by the plaintiff.

The plaintiff moved for reconsideration, which the court denied.  In denying the motion, the court determined "that the privacy interest of certain employees in non-disclosure outweighs the public interest in disclosure of the single redacted sentence which concerns employees who are subordinate to the superintendent."  This appeal followed.

On appeal, the plaintiff first argues that the SAU's policy for transmitting public records violates RSA chapter 91-A.  Next, he asserts that the cyber security concerns cited by the SAU in support of its public records transmission policy are undermined by the SAU's regular use of e-mail.  He also argues that the SAU's policy is unreasonable and therefore unconstitutional.  Finally, he contends that the legislative history of the 2016 amendment to RSA 91-A:4, IV supports the free delivery of electronic records.  Because the issues the plaintiff raises require us to determine whether the trial court correctly interpreted the Right-to-Know Law, our review is de novo.  New Hampshire Resident Ltd. Partners of Lyme Timber Co. v. New Hampshire Dep't of Revenue Admin., 162 N.H. 98, 102 (2011).

"The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people."  38 Endicott St. N. v. State Fire Marshal, 163 N.H. 656, 660 (2012) (quotation omitted).  "It thus furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted."  Id.; see also N.H. CONST. pt. I, art. 8.  "Although the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives."  38 Endicott St. N., 163 N.H. at 660.  "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively."  Green v. Sch. Admin. Unit #55, 168 N.H. 796, 799 (2016) (quotation omitted).  "A public entity seeking to avoid disclosure under the Right-to-Know Law bears a heavy burden to shift the balance toward nondisclosure."  38 Endicott St. N., 163 N.H. at 660 (quotation omitted).

We first address the plaintiff's argument that the SAU's policy for transmitting public records violates RSA 91-A:4 (Supp. 2016).

3

RSA 91-A:4 provides, in relevant part:

I. Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, including minutes of meetings of the public bodies, and to copy and make memoranda or abstracts of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5. In this section, "to copy" means the reproduction of original records by whatever method, including but not limited to photography, photostatic copy, printing, or electronic or tape recording.

. . . .

IV. Each public body or agency shall, upon request for any governmental record reasonably described, make available for inspection and copying any such governmental record within its files when such records are immediately available for such release. If a public body or agency is unable to make a governmental record available for immediate inspection and copying, it shall, within 5 business days of request, make such record available, deny the request in writing with reasons, or furnish written acknowledgement of the receipt of the request and a statement of the time reasonably necessary to determine whether the request shall be granted or denied. If a computer, photocopying machine, or other device maintained for use by a public body or agency is used by the public body or agency to copy the governmental record requested, the person requesting the copy may be charged the actual cost of providing the copy, which cost may be collected by the public body or agency. No fee shall be charged for the inspection or delivery, without copying, of governmental records, whether in paper, electronic, or other form. . . .

V. In the same manner as set forth in RSA 91-A:4, IV, any public body or agency which maintains governmental records in electronic format may, in lieu of providing original records, copy governmental records requested to electronic media using standard or common file formats in a manner that does not reveal information which is confidential under this chapter or any other law. If copying to electronic media is not reasonably practicable, or if the person or entity requesting access requests a different method, the public body or agency may provide a printout of governmental records requested, or may use any other means

4

reasonably calculated to comply with the request in light of the purpose of this chapter as expressed in RSA 91-A:1.

The plaintiff argues that the SAU's policy violates the "[n]o fee . . . for . . . delivery, without copying" language of RSA 91-A:4, IV. Furthermore, he asserts that, read together, RSA 91-A:4, IV and V mandate that the SAU must comply with his request because those provisions impose a duty upon the SAU to deliver records in the electronic format requested. He also argues that providing the documents in the form of a Portable Document Format (PDF) on a thumb drive violates RSA 91-A:4, IV and V.

We are not persuaded by the plaintiff's arguments. The trial court found that the SAU charges $7.49 — a thumb drive's actual cost — for thumb drives it sells to individuals making Right-to-Know requests. RSA 91-A:4, IV specifically permits a public body or agency to charge the "actual cost of providing the copy" if "a computer, photocopying machine, or other device" is used by the public body or agency "to copy the governmental record requested." RSA 91-A:4, IV. Because a thumb drive falls into the catch-all category of some "other device . . . used by the public body or agency to copy the governmental record requested," we conclude that the SAU's policy complies with the statute. See id.

The plaintiff maintains, however, that his request that the records be e-mailed to him was merely a request for the "delivery" of the records, not for "copying" them, and, therefore, that the requirement that they be produced on a thumb drive for which he must pay constitutes a fee that is prohibited by the statute. However, as the plaintiff himself acknowledges in his brief, e-mailing the records to him as he requested would itself require copying the records, albeit in electronic form. The SAU's procedure requiring use of a thumb drive simply calls for the use of a different type of electronic copying. Given that the statute allows the public body to charge for "copying," and contains no language suggesting that that term was intended to encompass paper copies only, we conclude that the term "delivery" as used in the statute was intended to cover the public body's obligation to produce documents or make them available to the public in circumstances in which there is no need for their reproduction in any medium. See RSA 91-A:4, IV. For example, if a municipality stores requested records in the basement or attic of the town hall, the statute would not allow it to charge for the time or effort involved in having its employee(s) deliver the records to the area of the building where they can be reviewed or inspected (without copying) by a member of the public who requested to see them.

Here, the SAU is not charging a fee for the inspection or delivery of the documents. It is charging a fee for the actual cost of the thumb drive (unless the plaintiff chooses to provide his own), onto which the records are copied, so that the plaintiff can view them electronically per his request. Because the

statute permits a fee for the copying of records, the use of a thumb drive as a medium to copy the records does not violate the statute. We also note that there is no allegation that the SAU charges any additional fee attributable to the time spent by its employees in effectuating the copying to the thumb drive — the only charge is for the actual cost of the drive itself.

Insofar as the plaintiff complains that the SAU's procedure is needlessly inconvenient in that it requires him to appear in person at the SAU offices in order to obtain copies of the records on the thumb drive, we again agree with the trial court that such a procedure is entirely consistent with the text of RSA 91-A:4, I, which provides that the right of access for purposes of inspection and copying of governmental records exists "during the regular or business hours" and "on the regular business premises" of all "public bodies or agencies." RSA 91-A:4, I. As the SAU correctly asserts, there is no provision of RSA chapter 91-A that requires a governmental body to "deliver" records to any location other than its regular place of business.

We also disagree with the plaintiff that the statute imposes a duty upon the SAU to deliver the records in the electronic format he requests. Nothing in the text of RSA 91-A:4, IV or V imposes such a requirement. And our decision in Green held only that, when a person requested access in electronic format to documents that were maintained in that form, and when the defendants had no valid reason not to provide copies in that form, they were required to do so. See Green, 168 N.H. at 801-03. We had no occasion in that case to distinguish between various forms of electronic media, or to consider whether the defendants were required to provide the requested records in the particular electronic format chosen by the requestor. Here, we agree with the trial court that "[s]o long as the manner of electronic production chosen by the municipality does not diminish the ease of use . . . of the information produced or the public's access to the information sought, Green does not counsel in favor of one method over another." See id. The SAU's policy for transmitting public records complies with Green because copying the records onto a thumb drive satisfies the plaintiff's request to provide them in electronic form. See id. As the trial court noted, "[p]roviding documents on thumb drives does not in any way limit the recipient's ability to review or search the requested documents and therefore serves all of the interests identified by the Supreme Court in Green."

Moreover, we find valid the SAU's concern that responding to records requests by e-mail "would introduce unreliability into the process because sometimes e-mails are too big to be received, and there is no way for [the SAU] to confirm receipt of e-mails it sends." Furthermore, we find merit in the SAU's argument that repeated e-mail communications over Right-to-Know requests could potentially pose a risk of cyber security threats. Likewise, we agree with the trial court's finding that attachments to e-mail responses to Right-to-Know requests could create a potential cyber security risk, especially if it were done

6

repeatedly by numerous public bodies and agencies. Thus, because the SAU's thumb drive policy does not diminish the use of the records requested and serves the important governmental interest of protecting public bodies' and agencies' information technology systems, we conclude that the policy is reasonable and does not violate RSA 91-A:4, IV or V.

We next address the plaintiff's argument that the SAU's reasoning behind its policy for transmitting public records contradicts its regular use of e-mail. However, the fact that the SAU may communicate by e-mail for some purposes does not mandate that it respond to Right-to-Know requests in this format. Although the SAU uses e-mail on a regular basis for some purposes, it has articulated legitimate cyber security concerns with regard to the use of e-mail to respond to Right-to-Know requests. As the trial court noted, "[w]hile [the plaintiff] may be correct that the simple forwarding of one email poses a very small cyber security risk, the greater potential risk comes from repeated email exchanges with multiple parties making Right-to-Know Law requests." The trial court further explained that attachments to e-mails regarding Right-to-Know requests pose an additional threat to public bodies' and agencies' cyber-security.

In addition to these security concerns, we also observe that, because violation of the Right-to-Know Law can result in serious adverse consequences for a governmental body and its officials, see RSA 91-A:8 (2013), they have a strong interest in insuring that they are able to effectively document their compliance with the statute. Thus, it is not improper for governmental bodies to adopt procedures for handling Right-to-Know Law requests that may be more formalized than those pertaining to other communications between the governmental body and members of the public.

The plaintiff also asserts, in summary fashion, that because the SAU's procedure for providing electronic records is, in his view, unreasonable, it violates Part I, Article 8 of the New Hampshire Constitution. However, inasmuch as we have concluded, for the reasons explained previously, that the SAU's procedure is not unreasonable, we necessarily reject his constitutional argument.

The plaintiff additionally argues that the SAU's procedure of providing electronic records via thumb drive in a PDF format rather than in the format of a forwarded e-mail renders the information less useful to him because, for example, the PDF format does not contain metadata that would be contained in an e-mail format. The SAU responds by asserting that the plaintiff did not properly preserve this argument for our review because it was not presented in his complaint and was raised for the first time in his motion to reconsider the trial court's order. The appellate record supports the SAU's position; it reflects that the plaintiff raised this argument for the first time in his motion for reconsideration. The SAU objected to the motion on the ground, among others,

that this argument had not been raised previously. The court denied the motion "for the reasons stated in [the] Defendant's opposition and in the Court's [original] order."

We will uphold a trial court's ruling on a motion for reconsideration absent an unsustainable exercise of discretion. Mt. Valley Mall Assocs. v. Municipality of Conway, 144 N.H. 642, 654 (2000). We conclude that the trial court acted reasonably and within its discretion in declining to address the plaintiff's argument regarding the usefulness of records provided via PDF versus e-mail format. Because this argument presented factual issues that would have required the trial court to conduct a new evidentiary hearing in order to properly address, and because the plaintiff made no showing of an inability to raise the argument at the time of the original hearing, we conclude that the trial court did not err in declining to address it in the context of a motion for reconsideration. See id. at 654-55.

Finally, the plaintiff argues that the legislative history of the 2016 amendment that added the fourth sentence to RSA 91-A:4, IV, see Laws 2016, 283:1, supports his claim that the legislature intended that electronic records be provided free of charge. However, we resort to legislative history only when a statute is ambiguous. See Favazza v. Braley, 160 N.H. 349, 351 (2010). Here, we do not find the current version of RSA 91-A:4 to be ambiguous with regard to any of the points raised by the plaintiff. Therefore, we decline his invitation to review the legislative history of the 2016 amendment of the statute.

Affirmed.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

8